NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
MAXIMO A. NINAL, JR.,                :
                                     :
            Plaintiff,             :
                                     :
      v.                             : CIVIL ACTION NO. 04-5718 (JAP)
                                     :
JODI EVANGELISTA, DEBORAH            :
HEINZ, AND THE NEW JERSEY DEP'T      :
OF COMMUNITY AFFAIRS,                :
                                     : **OPINION**
            Defendants.            :
_____:

APPEARANCES:

Glenn L. Cavanagh, Esq.
Cavanagh & Associates, P.C.
727 Raritan Road (Suite 202-A)
Clark, New Jersey 07066
      Attorney for Plaintiff

Julie Cavanagh, Esq.
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box. 112
Trenton, New Jersey 08625
      Attorney for Defendants

PISANO, District Judge.

Plaintiff, Maximo Ninal, brings this action against the New Jersey Department of Community Affairs (the "Department"); Deborah Heinz, Supervising Program Development Specialist at the Department; and Jodi Evangelista, Director of Human Resources at the Department.  Plaintiff alleges that the Defendants engaged in employment discrimination against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2005), and N.J.S.A. §§ 10:5-4 and 10:5-12 when they allegedly refused to re-hire Plaintiff as a field representative.[1]  Defendants submitted a motion for summary judgment or, in the alternative, for dismissal of Plaintiff's complaint for lack of subject matter jurisdiction.  For the following reasons, Defendants motion to dismiss for lack of subject matter jurisdiction is granted.[2]

I. **Background**

Plaintiff was employed as a field representative in the Department's Section 8 housing assistance program from 1994 through April, 2001. In his capacity as a field representative, Plaintiff was responsible for determining eligibility and meeting the housing needs of clients in the Section 8 program.

The Department filed two Notices of Disciplinary Action against the Plaintiff.  First, on December 5, 2000, the Department charged Plaintiff with falsifying his time sheet for the afternoon of September 27, 2000.  Plaintiff filed an untimely appeal of this charge with the Merit

---

[1] Jurisdiction is premised on 28 U.S.C. § 1331 (2005) because Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2005).

[2] The Court decides this motion without oral argument as permitted by Federal Rule of Civil Procedure 78.

System Board on January 5, 2001. In support of his appeal, Plaintiff submitted a field appointment schedule dated September 27, 2000. The Department realized that the field appointment schedule submitted to the Merit System Board was inconsistent with the field appointment schedule for the same day that Plaintiff previously submitted to the Department.[3] As a result of this inconsistency, the Department filed a second Notice of Disciplinary Action against the Plaintiff on March 2, 2001. The Department charged Plaintiff with falsifying a field appointment schedule and soliciting statements from other persons to support his falsified field appointment schedule.

The Department sanctioned Plaintiff by (1) suspending him for ten days for his initial act of falsifying time records, the subject of the December 5, 2000 disciplinary action; and (2) removing Plaintiff from his position as a field representative as of April 19, 2001 because of the March 2, 2001 disciplinary action.

Plaintiff appealed the Department's disciplinary actions to the Merit System Board. In addition, Plaintiff filed an Unfair Practice Charge with the State of New Jersey Public Employment Relations Committee ("PERC") alleging that the Department improperly engaged in retaliation, harassment, and discrimination against the Plaintiff in his workplace.

Plaintiff's appeals of the disciplinary actions and his Unfair Practice Charge were all consolidated before the Office of Administrative Law for a hearing before Administrative Law

---

[3] The field appointment schedule Plaintiff previously submitted to the Department for September 27, 2005 listed a shorter time frame and less field inspections that the schedule submitted to the Merit System Board — five field inspections conducted between 9:00 a.m. and 12:00 p.m as opposed to the seven field inspections between 10:00 a.m. and 4:00 p.m. listed on the schedule submitted to the Merit System Board.

Judge Robert J. Giordano. Judge Giordano conducted a plenary hearing in this matter on October 16, 2003. During this hearing, the parties engaged in significant settlement negotiations and ultimately reached a settlement agreement.

The parties agree that under the settlement agreement discussed on October 16, 2003, the Plaintiff would do the following: (1) withdraw his appeals from the two disciplinary actions as well as his Unfair Labor Charge; and (2) waive any claims for back pay, vacation pay, or any other "emolument of employment." The parties concur that the Department agreed to do the following in return: 1) withdraw the disciplinary charges against the Plaintiff; (2) remove any references to the disciplinary charges from Plaintiff's personnel file and instead include in the file a reflection of Plaintiff's resignation in good standing; (3) issue a "to whom it may concern" departmental acknowledgment letter stating that Plaintiff resigned from employment in good standing; and (4) pay Plaintiff $35,000.00.

Defendants assert that the Plaintiff also agreed that he would: (1) release the Department from "any and all claims that may arise out of the within incidents;" and (2) not seek employment in the future with the Department. Although Plaintiff's opposition brief fails to list these conditions as terms of the settlement agreement discussed on October 16, 2003, the record of the proceedings before Judge Giordano clearly indicate that these terms were conditions of the agreement.[4]

---

[4] Exhibit 9 to the Certification of Julie Cavanagh, Esq. is a transcript of the October 16, 2003 proceedings before Judge Giordano. The following exchanges occurred between Judge Giordano and Plaintiff during this proceeding:

> Judge:  In other words, you have no other law suits against them with the exception of if you had a worker's compensation claim, which isn't addressed here. I don't know. That would be an exception, but other than

Thereafter, the Plaintiff refused to sign a written agreement memorializing these settlement terms.  The parties appeared for another hearing before Judge Giordano on March 24, 2004.  Plaintiff argued that he did not want to sign the agreement because he did not understand its terms.  Plaintiff claimed that he thought that the discussions were merely a settlement offer and that there was no agreement until a written document was actually signed.  Judge Giordano found that Plaintiff understood the terms of the agreement and entered into it freely and voluntarily at the October 16, 2003 hearing and, therefore, that the agreement was enforceable.  The Merit System Board and PERC, in a joint decision, affirmed Judge Giordano's decision.

Plaintiff did not appeal Judge Giordano's ruling to the New Jersey Appellate Division.  Instead, on July 21, 2004, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff alleged that he was discriminated against because he applied for re-hire with the Department in October, 2003 and March, 2004 and was denied re-hire.  The EEOC found that Plaintiff did not establish a statutory violation and dismissed Plaintiff's action.

---

|        | that, in anything arising out of the incidents alleged herein - - civil rights claim, wrongful termination, lab claim, the PERC claim that you have also brought, you're releasing any and all claims in those regards.  You understand that? |
|--------|---|
| Ninal: | Yes, Your Honor. (p. 12) |
| . . . . | |
| Ninal: | I have some few questions about why do I have not - - I will not be allowed to be applied again to the Department of Community Affairs? |
| Judge: | Right.  Any other agency within the state or sub-agency or local agency you can apply to except those that are within the Department of Community Affairs.  That's one of the terms in the settlement agreement.  Do you understand that? |
| Ninal: | Yes, I do. (p. 13) |

Subsequently, on August 31, 2004, Plaintiff cashed the $35,000.00 check that the Department sent to him pursuant to its obligations under the settlement agreement. Plaintiff then filed suit in this Court on November 19, 2004.

In the instant suit, Plaintiff alleges that the Defendants discriminated against him in violation of both federal and New Jersey law by refusing to re-hire him as a field representative on October 16, 2003. Plaintiff states that Heinz and Evangelista both spoke to Plaintiff's counsel, Robert H. Jaffe, Esq., on October 16, 2003, and informed him that they did not want to re-hire Plaintiff as an employee of the Department. However, Plaintiff offers no evidence that he specifically spoke to Heinz or Evangelista about being re-hired for a position at the Department outside of the context of the settlement discussions and hearing on October 16, 2003. Further, both Heinz and Evangelista submitted affidavits stating that they had not spoken with Plaintiff since the October 16, 2003 hearing before Judge Giordano. Both Heinz and Evangelista further stated in their respective affidavits that to their knowledge Plaintiff had not reapplied for a position at the Department.

Thus, the only possible interpretation of Plaintiff's claims that he was discriminated against because the Department refused to re-hire him must stem from the settlement reached at the hearing before Judge Giordano on October 16, 2003. Plaintiff now apparently claims that because the Department sought Plaintiff's agreement that he would not seek re-employment with the Department as part of the settlement discussed on October 16, 2003, the Department discriminated against him on the basis of his race, sex, and national origin.

II.     Legal Discussion

A.     <u>**Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction**</u>

Defendants bring this motion to dismiss for lack of subject matter jurisdiction under the Rooker-Feldman doctrine which is discussed in detail below. The Court will treat Defendants' motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). <u>See</u> Fed. R. Civ. P. 12(b)(1); <u>see</u> <u>also</u> <u>19th Street Baptist Church v. St. Peter's Episcopal Church</u>, No. Civ.A. 99-CV-5085, 2003 WL 22849592, at *2 (E.D. Pa. Nov. 26, 2003) (applying Rule 12(b)(1) to motion to dismiss for lack of jurisdiction under Rooker-Feldman doctrine); <u>Hanover Group, Inc. v. Manufactured Home Communities, Inc.</u>, No. IP00-0739-C-T/G, 2000 WL 1124877, at *2 (S.D. Ind. Jul. 12, 2000) ("A Rooker-Feldman defense should be presented through a motion to dismiss pursuant to Rule 12(b)(1).").

When subject matter jurisdiction is challenged under 12(b)(1), the plaintiff has the burden to show that the court has the requisite jurisdiction to hear the case. <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005). Further, the district court "may not presume the truthfulness of plaintiff's allegations, but rather must evaluat[e] for itself the merits of [the] jurisdictional claims." <u>Id</u>. (citing <u>Mortensen v. First Fed. Savings & Loan Ass'n.</u>, 549 F.2d 884, 891 (3d Cir. 1977)).

B.     <u>**The Rooker-Feldman Doctrine**</u>

The Rooker-Feldman doctrine prevents a federal court from exercising subject matter jurisdiction over a matter in which the plaintiff is a losing party in a state court lawsuit who "filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking the federal court's review and rejection of that judgment."

Exxon Mobile Corp. v. Saudi Basic Indus. Co., 125 S. Ct. 1517, 1526 (2005). The doctrine is based on the established premise that federal district courts are empowered to exercise original jurisdiction, not act as appellate courts in review of state court judgments. See Knapper v. Bankers Trust Co., 407 F.3d 573, 580 (3d Cir. 2005).

Under the Rooker-Feldman Doctrine, lower federal courts cannot entertain constitutional claims[5] that are inextricably intertwined with a state adjudication." See Chajkowski v. Bosick, 132 Fed. Appx. 978, 979 (3d Cir. 2005); Knapper, 407 F.3d at 580.[6] This analysis necessarily entails two inquiries: (1) the Court must determine if the state court proceeding was an adjudication, see, e.g., District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 478 (1983); see also Forchion v. Intensive Supervised Parole, 240 F. Supp. 2d 302, 306 (D.N.J. 2005) ("the doctrine only applies when the action taken by the state body is judicial and not legislative,

---

[5] Although the statement of the rule refers to "constitutional claims," courts have applied the Rooker-Feldman doctrine to other federal claims, including claims under the federal civil rights statutes. See Snodderly v. Kansas, 79 F. Supp. 2d 1241, 1246 (D. Kan. 1999) ("The [Rooker-Feldman] doctrine precludes federal jurisdiction even when the state court's decision implicates federal constitutional issues . . . or when the plaintiff brings his federal action under federal civil rights statutes."); Hurdle v. Commonwealth of Virginia Dep't of Environmental Quality, 227 F. Supp. 2d 549, 558-59 (E.D. Va. 2002) (dismissing Plaintiff's Title VII claims under the Rooker-Feldman doctrine because the claims were inextricably intertwined with state disciplinary proceedings); Cf. Industrial Comm. & Electronics, Inc. v. Monroe County, 134 Fed. Appx. 314, 318-19 (11th Cir. 2005) (applying Rooker-Feldman doctrine to claim brought under the Federal Telecommunications Act); Yonkers Electric Contracting Corp. v. Local Union No. 3 et al., 220 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2002) (applying Rooker-Feldman doctrine to claim under the Labor Management Relations Act). The policies behind the Rooker-Feldman doctrine — federal court deference to state court judgments and finality of judgments, see, e.g., Guarino v. Larsen, 11 F.3d 1151, 1157 (3d Cir. 1993)— are equally applicable when a Title VII claim, as opposed to a general constitutional claim, is raised in federal court.

[6] The Rooker-Feldman doctrine also prohibits a federal court from exercising jurisdiction over a federal claim that was actually litigated in state court prior to the filing of a federal action. See Knapper v. Bankers Trust Co., 407 F.3d 573, 580-81 (3d Cir. 2005). However, there is no evidence that Plaintiff's claims in this matter were actually litigated in previous state actions.

ministerial, or administrative in nature"); (2) if there is a state court adjudication, the Court must determine whether the federal claim, in this case, a Title VII employment discrimination claim, is "inextricably intertwined" with the state court adjudication.

This Court finds that the joint decision of the Merit System Board and PERC is "judicial in nature" and thus, qualifies as an adjudication the Rooker-Feldman doctrine. Whether a particular proceeding before a state tribunal is judicial in nature is a question of law to be determined by the Court. See Feldman, 460 U.S. at 476. A judicial inquiry "investigates, declares and enforces liabilities as they stand on present or past facts and under law supposed already to exist. . . . Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter . . . ." Id. at 477. The nature of the proceeding depends "not on the character of the body but upon the character of the proceedings." Id.

The Merit System Board and the PERC were called upon to investigate the circumstances surrounding the settlement agreement and reach a legal conclusion as to its validity. This was clearly not rulemaking or the disposition of a purely ministerial matter, but instead, the application of legal principles to a live dispute. Thus, the Rooker-Feldman doctrine is applicable. Cf. Feldman, 460 U.S. at 479-82 (finding that state court proceeding was judicial and not legislative, administrative, or ministerial); Guarino v. Larsen, 11 F.3d 1151, (3d Cir. 1993) (finding that state court proceeding revoking judge's senior status was adjudicative because the court applied state law to reach legal conclusions in the proceeding).

Since this Court finds that a prior state adjudication exists, the Court must now determine whether the federal claim presented is "inextricably intertwined" with the joint decision of the

Merit System Board and PERC. A federal claim is inextricably intertwined with a prior state adjudication where "the relief requested in the federal action would effectively reverse the state decision or void its ruling." See Chajkowski, 132 Fed. Appx. at 979; Whiteford v. Reed, 155 F.3d 671, 673-674 (3d Cir. 1998).

      This Court holds that Plaintiff's Title VII claim is "inextricably intertwined" with the joint decision by the Merit System Board and PERC and thus, that the Court lacks the subject matter jurisdiction to adjudicate Plaintiff's claim under the Rooker-Feldman doctrine. Since the joint decision found that the settlement agreement reached on October 16, 2003 was enforceable, Plaintiff was a losing party in the state court adjudication. Although Plaintiff does not specifically ask the Court to review and reject the findings of the joint decision, the Court is unable to grant Plaintiff's requested relief without effectively voiding that decision. See Cambria County Children & Youth Services v. Lucas, 137 Fed. Appx. 448, 449 (3d Cir. 2005) (dismissing Plaintiff's claims under the Rooker-Feldman doctrine where the claims either "expressly or *implicitly* [attempted] to reverse the state court decisions" (emphasis added)). The joint decision held that the settlement agreement, including the condition that Plaintiff not seek re-employment with the Department, was enforceable. In order for this Court to find that Defendants discriminated against Plaintiff by prohibiting him from seeking re-employment with the Department as a condition of the settlement agreement, the Court would have to review the terms of the settlement agreement and ultimately find the settlement to be unenforceable, thus voiding the joint decision by the Merit System Board and PERC.

      Plaintiff fails to demonstrate how the relief he seeks in federal court will leave the state court adjudication enforcing the settlement agreement intact. See Bolus v. Cappy, 141 Fed.

Appx. 63, 65 (3d Cir. 2005) (dismissing Plaintiff's § 1983 claim under the Rooker-Feldman doctrine because Plaintiff "failed to demonstrate how any of his federal claims regarding his state court proceedings and appeals are entitled to federal district court review). In fact, Plaintiff's entire opposition to Defendants' motion is that the motion should be denied because Defendants have breached the settlement agreement between the parties.[7] This position actually supports the application of the Rooker-Feldman doctrine because the Plaintiff is specifically asking the Court to consider whether the Defendants breached the settlement agreement.

The application of the doctrine is further supported by one of the crucial terms of the settlement agreement of October 16, 2003. Under the agreement, the Plaintiff agreed to release the Department from "any and all claims that may arise out of the within incidents." In order to consider whether Plaintiff can even bring the instant claims, the Court would have to consider the enforceability of the settlement agreement.

Thus, this claim is inextricably intertwined with the prior state adjudication and this Court lacks the requisite subject matter jurisdiction to hear Plaintiff's claims. See, e.g., Knapper, 407 F.3d at 581 (holding that court lacked subject matter jurisdiction under the Rooker-Feldman doctrine because Plaintiff can only prevail "if a federal court concludes that the state courts' default judgments were improperly obtained" and thus, the claims were "inextricably intertwined"); Untract v. Weimann, 141 Fed. Appx. 46, (3d Cir. 2005) (dismissing Plaintiff's § 1983 claim for lack of subject matter jurisdiction under the Rooker-Feldman doctrine because "not only [did Plaintiff] seek to undo state court orders, but almost all of the actions . . . are

---

[7] Plaintiff, in his opposition brief, does not even address Defendants' argument that this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine.

directly related to the state court proceedings.").[8]

Should Plaintiff seek review of the joint decision by the Merit System Board and PERC affirming Judge Giordano's decision to enforce the settlement agreement of October 16, 2003, he should file an appeal with the New Jersey Appellate Division raising his concerns. This Court cannot act as an appellate tribunal to hear Plaintiff's grievances.

Without jurisdiction to hear the federal claims present in this action, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under N.J.S.A. §§ 10:5-4 and 10:5-12 . See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."); see also Mackenzie v. Donovan, 375 F. Supp. 2d 312, 320-21 (S.D.N.Y. 2005) (dismissing plaintiff's state law claims after all federal claims were dismissed for lack of subject matter jurisdiction under Rooker-Feldman doctrine).

---

[8] To the extent that Plaintiff argues that he was discriminated against or retaliated against on occasions other than October 16, 2003, an interpretation that does not clearly derive from Plaintiff's complaint in this Court, but can be found in the Intake Questionnaire — Hire/Promotion that Plaintiff previously filed with the EEOC and attached to his complaint, such claims would also be barred by the Rooker-Feldman doctrine because the settlement agreement contained a provision that required Plaintiff to release any and all claims that may arise out of the incidents in question. The Court would have to consider the enforceability of the settlement agreement to rule on the validity of those claims. If any of those claims do not arise out of the disciplinary incidents in question, Plaintiff's bare allegations of discrimination, which are unintelligible in his complaint and supporting papers, are insufficient to survive summary judgment. To withstand a motion for summary judgment on his Title VII claim, plaintiff must make a prima facie showing of discrimination and point to "evidence establishing a reasonable inference that the employer's proffered explanation [for its alleged actions] is unworthy of credence."). See Hugh v. Butler County Family YMCA, 418 F.3d 265, 268 (3d Cir. 2005) (quoting Sorba v. Penn. Drilling Co., 821 F.2d 200, 205 (3d Cir. 1987). Plaintiff has failed to make any such showing. To the extent any of his allegations were based in state law, as indicated above, the Court declines to exercise jurisdiction over such claims.

**III.     Conclusion**

  For the reasons stated above, the Court grants Defendants' motion to dismiss for lack of subject matter jurisdiction.  An appropriate order accompanies this opinion.

DATED: 20th of October, 2005                              s/ Joel A. Pisano                
                        JOEL A. PISANO, U.S.D.J.